IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 1:11-CR-00242** |
| | : | |
| v. | : | **(Judge Conner)** |
| | : | |
| **ABRAHAM CRUZ** | : | |

# MEMORANDUM

Presently before the court is a post-trial motion for judgment of acquittal (Doc. 66), filed by defendant Abraham Cruz ("Cruz"). Cruz moves for judgment of acquittal pursuant to Rule 29 of the Federal Rules of Criminal Procedure. For the reasons that follow, the motion (Doc. 66) will be denied.

## I.   Factual Background & Procedural History

On August 10, 2011, a grand jury indicted Cruz on one count of threatening to assault and kill employees of the United States Social Security Administration in violation of 18 U.S.C. § 111 and two counts of threatening to assault and kill a United States Department of Homeland Security Federal Agent in violation of 18 U.S.C. § 115. (Doc. 11). Cruz pleaded not guilty to all three counts, and a jury trial commenced on April 2, 2012. (Doc. 19; Tr. at 1). The following evidence was adduced at trial.

On August 8, 2011, Cruz entered the United States Social Security Administration Office in Harrisburg, Pennsylvania around 8:45 a.m. to discuss his benefits with a claims representative. (Trial Transcript at 70)[1]. The representative

---

[1] Citations to the trial transcript are abbreviated throughout as "Tr."

informed Cruz that he would be unable to receive benefits until a medical decision was made. (Doc. 49 ¶ 5). Cruz became agitated and exited the interview room at approximately 9:50 a.m. (Id.; Tr. at 71). Protective Service Officer Kevin Gebherd ("PSO Gebherd"), who was stationed in the waiting area of the Social Security Administration Office, testified at trial that Cruz first said something unintelligible and then yelled "you're going to need toe tags" as he exited the office.[2] (Tr. at 71). PSO Gebherd reported the incident to the Protective Service "megacenter" in Philadelphia around 9:55 a.m.

Around 10:30 a.m., Department of Homeland Security Special Agent Edward Ryan ("Special Agent Ryan"), whose job involves investigating alleged crimes against government employees or on government property, received a telephone call advising him of the situation that had occurred in Harrisburg that morning. (Tr. at 96–97, 99–100). Special Agent Ryan received an e-mail describing the situation and then spoke with PSO Gebherd via telephone. (Tr. at 101).

At approximately 1:30 p.m., Special Agent Ryan telephoned Cruz in order to determine whether Cruz had calmed down since the morning, to further discuss the incident, and ultimately to "mitigate the threat."[3] (Tr. at 103). Special Agent Ryan identified himself and asked Cruz if he had been to the Social Security

---

[2] PSO Gebherd understood Cruz to be referring to tags attached for identification purposes to the toes of corpses in morgues.

[3] Special Agent Ryan testified that, when alerted of a threat, he first attempts to unintrusively contact the person who allegedly made the threat and "get that behavior to stop" without resorting to the judicial process. (Tr. at 102).

2

Administration, to which Cruz responded that he had. (Tr. at 104). Special Agent Ryan testified that Cruz became agitated during the phone call, made threats against Social Security employees, and told Special Agent Ryan that he was going to "take [his] ticket book, take [his] gun, take [his] doughnut and beat [his] ass." (Tr. at 104). Special Agent Ryan testified that Cruz, after making more threats, terminated the call. (Tr. at 105).

Special Agent Ryan then called the United States Attorney's Office for the Middle District of Pennsylvania and advised Assistant United States Attorney Kim Daniel ("AUSA Daniel") of the circumstances and content of the call. (Tr. at 107). AUSA Daniel authorized Special Agent Ryan to call Cruz back and record the telephone conversation, and Special Agent Ryan did so at approximately 2:30 p.m. (Tr. at 108). During the second telephone call, Cruz made statements such as "[t]here gonna be a war about this," "you should be concerned about yourself . . . If I'm gonna tell you I'm gonna kill you, I ain't gonna tell you I'm gonna kill you, I'm gonna swing at you, all I gotta do is hit you one time," and "[w]hy don't you come see me in person so we can talk and see whatever, so I can see what I'm talking to. Give me a target, you have one." (Tr. at 111; Ex. 200).

Special Agent Ryan contacted AUSA Daniel; AUSA Daniel listened to the recording of the telephone call and requested that Special Agent Ryan travel from Philadelphia to Harrisburg. (Tr. at 114). Once in Harrisburg, Special Agent Ryan filed a criminal complaint and obtained an arrest warrant for Cruz. (Tr. at 114). Special Agent Ryan, along with eight armed inspectors and police officers, arrested

Cruz at his sister's house at approximately 6:00 p.m on August 8, 2011.[4] (Tr. at 116–17).

During the trial, the parties stipulated that Cruz had "previously received Social Security benefits based on a diagnosis of affective/mood disorders and personality disorders," and that Cruz had applied in August, 2011 for Social Security benefits "for bipolar disorder and multiple personalities." (Doc. 49 ¶¶ 1, 2). Special Agent Ryan testified on cross-examination that some of Cruz's statements during the phone calls were unintelligible or unresponsive. (Tr. at 128–31). Cruz's sister, Yvette Cruz, testified that Cruz had bipolar disorder and that he had been talking to himself leading up to the August 8, 2011 incidents because he had not been taking any medication. (Tr. at 147–48, 152). Yvette Cruz stated that her brother often used the phrase "toe tags," sometimes referring to himself as "toe tags and body bags." (Tr. at 151–52, 157).

At the conclusion of the prosecution's case, Cruz moved for a judgment of acquittal on all three counts pursuant to Rule 29 of the Federal Rules of Criminal Procedure. (Tr. at 137). The court granted the motion with respect to count one—the violation of 18. U.S.C. § 111—and denied the motion with respect to counts two and three. (Tr. at 144). On April 3, 2011, the jury found Cruz guilty of the two

---

[4] Special Agent Ryan testified that four uniformed Harrisburg police officers, three uniformed inspectors, and one Special Agent assisted him in the arrest. Special Agent Ryan determined that, in the totality of the circumstances, "it would be in [the arresting officers'] best interests to have an overwhelming show of force" due to the violent nature of some of Cruz's statements. (See Tr. at 5–16).

remaining counts. (Doc. 59). Cruz timely renewed his motion for a judgment of acquittal with respect to counts two and three on April 24, 2011.[5] (Doc. 66). The motion is now ripe for disposition.

## II.   Standard of Review

On a motion for judgment of acquittal under Rule 29 of the Federal Rules of Criminal Procedure, the court must "determine whether any rational trier of fact could have found proof of guilt beyond a reasonable doubt based on the available evidence." United States v. Smith, 294 F.3d 473, 476 (3d Cir. 2002) (quoting United States v. Wolfe, 245 F.3d 257, 262 (3d Cir. 2001)). "[I]f there is substantial evidence, viewed in the light most favorable to the government, to uphold the jury's decision," then the court must sustain the verdict. United States v. Flores, 454 F.3d 149, 154 (3d Cir. 2006). Under the highly deferential standard of review for a Rule 29 motion for judgment of acquittal, it is not the court's task to "weigh[] credibility and assign[] weight to the evidence." United States v. Brodie, 403 F.3d 123, 133 (3d Cir. 2005). A decision to overturn a conviction based upon insufficient evidence may only be made "where the prosecution's failure was clear." United States v. Leon, 739 F.2d 885, 890 (3d Cir. 1984).

---

[5] Rule 29 of the Federal Rules of Criminal Procedure allows a defendant to renew a motion for judgment of acquittal within 14 days of a guilty verdict or dismissal of the jury. Before the expiration of the original 14-day deadline on April 17, 2012, Cruz moved to continue the deadline to April 24, 2012. That motion (Doc. 63) was granted, and Cruz timely filed the present motion (Doc. 66) on April 24, 2012.

**III. Discussion**

Cruz argues that the government presented insufficient evidence to support his conviction on the two counts of violating 18 U.S.C. § 115. (Doc. 66 ¶ 30). The three elements of a violation of 18 U.S.C. § 115 are: (1) communication of an actual threat to assault, kidnap, or murder, (2) someone who is a federal official, and (3) with the specific intent to impede, intimidate, or interfere with that official while engaged in the performance of his official duties or to retaliate against that official on account of the performance of his official duties. 18. U.S.C. § 115; (Tr. at 60–63; see Doc. 68, at 5). There is ample evidence that Special Agent Ryan was indeed a federal official on August 8, 2011, and that element is unchallenged by the defense. (Tr. at 96; Doc. 68, at 5); see 18 U.S.C. § 1114 (defining "federal official" for the purposes of 18 U.S.C. § 115). Therefore, the court need only address the first and third elements of the charges.

**A. Element One: Actual Threat**

Cruz first claims that there was insufficient evidence to establish that he communicated an actual threat to Special Agent Ryan. (Doc. 67, at 9). This is based on the contention that Cruz's statements, in their totality, do "not rise to the level of a *serious* statement expressing an intention to inflict bodily injury" in light of evidence pertaining to Cruz's history of mental illness and behavior in the days immediately prior to August 8, 2011.

Viewing the evidence in the light most favorable to the government, the court concludes that there was sufficient evidence for a rational jury to find beyond a

6

reasonable doubt that Cruz communicated actual threats to Special Agent Ryan. Both Special Agent Ryan's account of the first telephone call and the recording of the second telephone call contain a number of statements that could be construed as threats. Special Agent Ryan testified that Cruz's statements, coupled with his tone and volume of voice and continuous ranting, constituted a direct threat to his own personal safety. (Tr. at 113, 134–36). Although Cruz presented, through the testimony of his sister, a possible explanation for his behavior, it was the task of the jury to determine the credibility of particular testimony as well as the weight given to explanatory evidence of Cruz's mental illness.

In the case at hand, the prosecution presented ample evidence suggesting that Cruz did communicate actual, serious threats to Special Agent Ryan on August 8, 2011, and thus the verdicts cannot be overturned on this ground.

### B.     **Element Three: Specific Intent**

Cruz also claims that "the evidence failed to show that Mr. Cruz acted with the requisite specific intent to interfere [with], impede, or intimidate [Special Agent] Ryan while engaged in the performance of his official duties," and thus the third element of 18 U.S.C. § 115 was not established. (Doc. 67, at 9–10). Like Cruz's first contention, this contention appears to be based on evidence of Cruz's behavior and history of mental illness.

For the same reasons stated above, the court concludes that there was sufficient evidence for a rational jury to find beyond a reasonable doubt that Cruz possessed the specific intent to interfere with, impede, or intimidate Special Agent

Ryan while engaged in the performance of his duties. The record indicates that Special Agent Ryan very clearly explained the purpose of his phone calls to Cruz, and there is sufficient evidence to conclude that Cruz knew the phone calls involved Special Agent Ryan's "official duties." (See Tr. at 104). Given Cruz's repeated failure to recant his previous statements, despite receiving ample opportunity to do so, Cruz's vocal manner, and statements that Special Agent Ryan "should be concerned about [him]self," and inviting Special Agent Ryan to "give [Cruz] a target," it is quite possible that a rational finder of fact could infer that Cruz had specific intent to "interfere with, impede, or intimidate" Special Agent Ryan in the course of his duties.

As noted above, the court may not, when ruling on a motion for judgment of acquittal pursuant to Rule 29, weigh evidence or assess credibility. In light of the deferential standard that must be applied, the court concludes that there was indeed sufficient evidence for a rational jury to conclude beyond a reasonable doubt that Cruz possessed the specific intent to interfere with, impede or intimidate Special Agent Ryan while engaged in the performance of his official duties on August 8, 2011.

**IV.**     **Conclusion**

For the reasons stated above, the court finds the evidence presented at trial sufficient to sustain the jury's conviction.  Therefore, the court will deny Cruz's motion for judgment of acquittal (Doc. 66) pursuant to Rule 29 of the Federal Rules of Criminal Procedure.

An appropriate order follows.

   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:       July 24, 2012

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | **CRIMINAL NO. 1:11-CR-00242** |
| : | |
| **v.** : | **(Judge Conner)** |
| : | |
| **ABRAHAM CRUZ** : | |

## ORDER

AND NOW, this 24th day of July, 2012, upon consideration of the motion for judgment of acquittal (Doc. 66) filed by Abraham Cruz, and for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that the motion (Doc. 66) is DENIED.

                                     S/ Christopher C. Conner
                                     CHRISTOPHER C. CONNER
                                     United States District Judge